## 54426. JACKSON v. THE STATE.

WEBB, Judge.

Euberta Jackson, indicted for murder, was convicted of voluntary manslaughter. On appeal she enumerates as error (1) the admission of testimony by two law enforcement officers as to certain statements made by her prior to her arrest, (2) the trial court's refusal to admit into evidence two photographs, and (3) the court's failure to give instructions on involuntary manslaughter, for which she made timely request.

Two sheriff's deputies on their way to answer a call on the Old Athens Highway in Hall County saw an ambulance pass on a nearby street. After completing their call they proceeded in the direction from whence the ambulance had come to Floyd Circle, where they observed a crowd of some two dozen to forty persons gathered in front of an old mobile home. They asked what had happened and were told that a man had been stabbed and was on his way to the hospital. One deputy asked if anyone had any idea who had stabbed the man, and several members of the crowd responded by pointing to Jackson, who was standing off by herself. The officers were

informed that there was another person inside and started toward the trailer. When they reached the mobile home one of the officers asked Jackson if she knew what happened. She made no response. The two officers entered the trailer where they remained for a short while. As they emerged from the mobile home, Jackson motioned to them and said, "I did it, let's go." In reply to the officer's question, "You did what?" she said, "I stabbed him, come on, let's go, I did it." She turned and began walking toward the patrol car. When she started to get in, one of the officers said, "Hold it a minute . . . I need to advise you of your rights."

1. Should the statements made by appellant have been excluded because prior thereto she had not been advised of her Miranda rights? Miranda v. Arizona, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

A careful review of the testimony leads us to believe that the law enforcement officer was not interrogating Jackson for the purpose of obtaining evidence to establish her guilt of a crime, but rather was seeking to determine the nature of the situation confronting him and his associate. *Shy v. State,* 234 Ga. 816, 823 (218 SE2d 599) (1975). His threshold inquiry as to whether she knew what had happened evoked no immediate response. "It was not a custodial interrogation, although the policeman admitted that if he had tried to leave he would not have been allowed to do so. It was a mere threshold inquiry, and a reasonable one." *Jones v. State,* 127 Ga. App. 137, 139 (4) (193 SE2d 38) (1972). Jackson's initial statement was spontaneous and made when she was not in custody, even though under strong suspicion. We hold the statements admissible under the circumstances.

2. Two photographs were tendered by appellant and excluded by the trial court. They are said to be a portrayal of one of appellant's attorneys standing inside the mobile home with his hat on holding a chair in the approximate position it had been held by the victim when he swung at Jackson. She contended that the victim attacked her with a chair and had in fact hit her with it. The photos were tendered for the purpose of rebutting the testimony of one detective that there was not enough room in the trailer for the victim to have swung the chair. The state objected on

the grounds that the two pictures were blurry and did not depict other items which were in the room.

To be admissible photographs must be fair and truthful representations of the thing in question. *Moore v. McConnell,* 105 Ga. App. 758, 759 (1) (125 SE2d 675) (1962). "The quantum of evidence required to sufficiently identify photographs as true and accurate representations of what they purport to depict is a matter to be left within the discretion of the trial court." *Johnston v. State,* 232 Ga. 268, 270 (1) (206 SE2d 468) (1974). Furthermore, at least one other photograph admitted in evidence sufficiently illustrated the defense contention, and accordingly Jackson was not harmed by the exclusion of the two additional pictures. *Central of Ga. R. Co. v. Luther,* 128 Ga. App. 178, 185 (6) (196 SE2d 149) (1973) (cert. den.).

3. Was the trial court's failure to give the jury instructions on involuntary manslaughter, timely requested, reversible error?

The only first-hand account of the fatal encounter was the testimony of the accused. She asserted that she did not intend to kill Tom Mims, but that he was a strong, intoxicated man who announced that he would not allow her to leave the trailer, that he beat her repeatedly with a chair, that she undertook to protect herself at first by shielding her body with her arms, and then by trying to grab the chair but was unable to hold onto it. She picked up a knife from the counter and began "sticking" at him in an effort to fend him off. Even a nick on his forearm and the neck failed to stop him. In the course of the struggle the knife entered his chest, he backed off, and she was able to leave the trailer. From across the street she called for an ambulance.

In *Jackson v. State,* 234 Ga. 549, 551 (216 SE2d 834) (1975) the court said: "There are two types of involuntary manslaughter (Code Ann. § 26-1103), both involving the death of another human being 'without intention to do so.' When a defendant on trial for murder admits the act but denies the intention to kill, Code Ann. § 26-1103 deserves special scrutiny. . . Code Ann. § 26-1103 (b) provides: 'A person commits involuntary manslaughter in the commission of a lawful act in an unlawful manner when

he causes the death of another human being, without any intention to do so, by the commission of a lawful act in an unlawful manner likely to cause death or great bodily harm.'

"The defendant here urges that the 'lawful act' was self-defense and that the 'unlawful manner' was the use of unnecessary (excessive) force. Defendant cites *Warnack v. State,* 3 Ga. App. 590 (60 SE 288), in support of this contention. . .

"The defendant's trial counsel requested and the court gave instructions as to self-defense, which requested instructions left open (the use of more force than necessary) the possible application of Code Ann. § 26-1103 (b). Now the defendant's counsel appointed for appeal complains that the court did not fill the gap in the instructions given at defendant's request.

"We feel certain that if the defendant had requested a charge pursuant to Code Ann. § 26-1103 (b), the trial judge would have given it. The defendant did not do so, . . ." and will not be heard to complain that the trial court failed to give a complete charge.

In this case, however, appellant's counsel did submit timely written requests for a charge on involuntary manslaughter within the purview of Code Ann. § 26-1103 (b), and the trial court refused to give any charge on that issue. Counsel then properly objected to the charge as given which omitted the requests. See *Prince v. State,* 142 Ga. App. 734 (1) (236 SE2d 918) (1977).

*Tate v. State,* 123 Ga. App. 18, 19 (2) (179 SE2d 307) (1970) and *Rogers v. State,* 137 Ga. App. 319, 321 (4) (223 SE2d 456) (1976) are suggested as contrary to *Jackson v. State,* supra. In *Tate* there was a domestic quarrel and a killing in the heat of passion, the accused shooting his common law wife when she advanced upon him with a butcher knife. It was there said that "he was not engaged in the commission of a lawful act in an unlawful manner." In *Rogers* the defendant offered no evidence, and there was none showing that the deceased was making any attack upon the defendant. Further, the record does not indicate that a request was made that § 26-1103 (b) be charged, only an observation that the court failed to charge on involuntary manslaughter. The rationale of

*Washington v. State,* 126 Ga. App. 396 (190 SE2d 821) (1972) was applied, in which it was ruled that the defendant, even if he did not intend to kill the deceased, nevertheless committed an aggravated assault upon his victim. Washington "picked up the deceased, threw him down and stabbed the deceased about the body with the knife three times." No request was submitted for a charge on involuntary manslaughter.

To us the preferable view is that expressed in *Jackson v. State,* supra, and to the extent that *Tate, Washington* and *Rogers* are in conflict with the present decision they are overruled.

We hold that the able trial judge's failure to charge on the issue of involuntary manslaughter, timely requested, was reversible error.

*Judgment reversed. Deen, P. J., Smith, Shulman, Banke and Birdsong, JJ., concur. Bell, C. J., and McMurray, J., dissent. Quillian, P. J., not participating.*

ARGUED SEPTEMBER 7, 1977 — DECIDED NOVEMBER 4, 1977.

*Whelchel, Dunlap & Gignilliat, James A. Dunlap, George L. Simpson, III,* for appellant.

*Jeff C. Wayne, District Attorney, James H. Whitmer, Assistant District Attorney,* for appellee.

BELL, Chief Judge, dissenting.

The statement concerning the charge on involuntary manslaughter by the commission of a lawful act in an unlawful manner found in *Jackson v. State,* 234 Ga. 549, 551 (216 SE2d 834) is obiter dictum and not binding. The holdings of this court found in *Tate v. State,* 123 Ga. App. 18, 19 (2) (179 SE2d 307) (authored by then Presiding Judge Jordan); the cases of *Washington v. State,* 126 Ga. App. 396 (190 SE2d 821) and *Rogers v. State,* 137 Ga. App. 319, 321 (223 SE2d 456) which cited and followed Judge Jordan's *Tate* are correct and should not be overruled because of the dictum found in *Jackson.* Not only is the *Jackson* quote obiter dictum but it is also erroneous. Obviously, when a defendant *exceeds* the bounds of self-defense (which the jury has decided she did in this case),

the defendant from that moment is no longer engaging in a *lawful* act (self-defense) but is aggressively committing a crime. In short it is not possible to engage in self-defense in an *unlawful* manner. "Self-defense" and "unlawful manner" are absolutely contradictive terms in law and to hold otherwise as a matter of law is a logical incongruity. Under the evidence, the defendant was not entitled to a charge on involuntary manslaughter (Code § 26-1103 (b)).

The judgment should be affirmed.