## 57992. FIREMAN'S FUND INSURANCE COMPANY et al. v. SMITH.

CARLEY, Judge.

Appellee Doris Gilbert Smith, a/k/a Doris Gilbert, filed a claim with the State Board of Workers' Compensation seeking benefits as the common-law wife and widow of the late Clark M. Smith, the victim of a fatal automobile accident arising out of and in the course of his employment with appellant Atlanta Newspapers, Inc. Hearing was held to determine whether or not appellee was in fact the common-law wife and widow of Clark M. Smith and an award was entered by the ALJ denying benefits, which was affirmed by the full board. On appeal to the superior court the case was remanded to consider testimony as to reputation in the community of marital status which the judge determined was improperly excluded as hearsay and which should be received as relevant to the issue of the creation of a common-law marriage, and to make new findings of fact and conclusions of law.

It is the position of the appellants that exclusion of this hearsay evidence, if error, was harmless; and that under the "any evidence" rule and Code § 114-710, the award of the full board should have been affirmed. Mrs. Smith contends that the superior court acted correctly in remanding the award because there was insufficient competent evidence to warrant the finding and the award was contrary to law.

1. "Code § 53-101 enumerates the essential elements of a marriage in this state: (1) The parties must be able to contract, (2) there must be an actual contract, and (3) there must be consummation according to law. In the absence of positive legislative enactment declaring unlicensed, nonceremonial marriages to be void, common law marriages have been recognized in Georgia since at least 1860. [Cits.] The three requirements of Code § 53-101 must be met, all at one period in time, in order for

there to be a common law marriage. . .

"When the relationship between the parties begins as an illicit arrangement, the burden is on the party asserting the validity of the marriage to show that the illicit relationship ended and that the parties did actually enter a marriage contract. [Cit.] In the case of a common law marriage, 'This may be done by . . . such circumstances as the act of living together as man and wife, holding themselves out to the world as such, and repute in the vicinity and among neighbors and visitors that they are such, and indeed all such facts as usually accompany the marriage relation and indicate the factum of marriage. The evidence in each case is for the jury.' [Cits.] . . .

"In addition, the evidence presented must show a present intent to marry; an agreement to marry in the future is not sufficient. In *Peacock v. Peacock,* 196 Ga. 441 (26 SE2d 608), the plaintiff testified to their agreement to marry at a future date, but she did not show a present marriage contract as is required by Code § 53-101." *Brown v. Brown,* 234 Ga. 300, 301-302 (215 SE2d 671) (1975).

Most importantly, "the additional fact of cohabitation is treated as essential, if not the main factor in establishing in this State a common-law marriage. Not one of the decisions has held that a mere agreement — unattended by cohabitation as husband and wife — between a man and woman under no legal disability, presently to be husband and wife, made in good faith and intended by them to create the relation of husband and wife, is sufficient without more to constitute a valid marriage." *Lefkoff v. Sicro,* 189 Ga. 554, 580 (6 SE2d 687, 133 ALR 738) (1939) (dissenting opinion, approved and adopted in *Drewry v. State,* 208 Ga. 239, 244 (65 SE2d 916) (1951)); *Tabor v. Fowler,* 119 Ga. App. 259 (1) (167 SE2d 220) (1969); *McBrayer v. McBrayer,* 227 Ga. 224, 225 (1) (179 SE2d 772) (1971).

After setting forth a condensation of the testimony of all the witnesses here, the ALJ found "as a matter of fact from a review of the evidence that the reputation to prove marriage must be founded on general and not divided or single reputation, and if reputation is divided, it is tantamount to no evidence at all (187/712, 717 (8)). In the

instant case, the claimant, Doris Gilbert, testified to an agreement to marry entered into voluntarily by the parties according to her testimony. However, I find as a matter of fact there was no subsequent ratification of the marriage by the conduct of the parties in the community where they lived or to the public at large. There were a couple of instances of their introduction of one another as man and wife, apparently among other married persons at resorts, however, this was apparently to avoid any social stigma or reflection on the parties but the overall pattern of conduct shows merely engagement in a meretricious cohabitation and a prime requirement of a common-law marriage is that of the parties to hold themselves out to the public as husband and wife. The testimony of the claimant on page 21 of the record sums up the relationship: 'We had an agreement that we would take care of each other,' and this was done by the parties. There is evidence to show an intention to marry, intention to sell their separate places of domicile and intention to legalize their relationship in the bonds of matrimony, however, there are many roads paved with good intentions and the intent of the parties in this case was an agreement to care for one another and there was no consummation of marriage but merely a relationship of mutual benefit to the parties and a love story but not a common-law marriage as contemplated by Georgia Law."

Thus the ALJ found that two of the three essential elements of a common-law marriage were missing, to wit: An actual present contract and cohabitation as man and wife. However, the claimant testified that "We had an agreement that we would take care of each other . . . And we didn't — we were not going to have a *formal marriage* at that time *but we did agree to be common law."* (Emphasis supplied.) This clearly shows the requisite intent for an actual present contract of common-law marriage. Moreover, throughout this testimony as well as that of several other witnesses who were friends and neighbors of the deceased, corroborating evidence that the decedent made references to the claimant as his wife was excluded from consideration by the ALJ on the basis that it was hearsay.

In *Cooper v. Butler,* 223 Ga. 797, 799 (2 (b)) (158 SE2d

244) (1967), a hearsay objection was also raised when the trial court permitted a witness to answer whether or not the deceased ever said she was married. The Supreme Court ruled that "[d]eclarations of deceased parties to a common law marriage are admissible in evidence for the purpose of showing the character of the cohabitation. *Drawdy v. Hesters,* 130 Ga. 161 (3) (60 SE 451, 15 LRA (NS) 190)." Thus since the ALJ here found that the evidence showed "meretricious cohabitation" it cannot be said that preclusion from consideration of the deceased's declarations of the claimant as his wife was harmless error. See *Tabor v. Fowler,* 119 Ga. App. 259, 261 (2), supra.

2. This error is further compounded by the finding "as a matter of fact from a review of the evidence that the reputation to prove marriage must be founded on general and not divided or single reputation, and if reputation is divided, it is tantamount to no evidence at all (187/712, 717 (8))." The case cited, *Rainey v. Moon,* 187 Ga. 712, 717 (8) (2 SE2d 405) (1939), actually holds that refusal to charge this language upon written request was not error because the charge given there fully and fairly instructed the jury as to the manner of proving a common-law marriage. Rather, the rule is that "[t]he 'elements of proof — namely cohabitation, reputation, declarations, conduct, and reception among friends and neighbors as married — are commonly, in a perfect case, found in combination. All the latter ones are shadows attending on cohabitation, and they should be simultaneous therewith . . .' " *Allen v. State,* 60 Ga. App. 248 (2) (3 SE2d 780) (1939).

"If an award of the State Board of Workmen's Compensation is authorized by any competent evidence, it must be affirmed even if the board or hearing director considered illegal evidence or assigned erroneous reasons for the award, *provided that the award was not based upon an erroneous legal theory which precluded the consideration by the board or hearing director of evidence which, if the same had been considered, would have authorized a contrary result."* (Emphasis supplied.) *Fidelity & Casualty Co. v. Hodges,* 108 Ga. App. 474 (1) (133 SE2d 406) (1963).

Thus, since reputation in the community as to marital status is relevant and should be received to establish a contended marriage as an exception to the hearsay evidence rule, the award was based on an erroneous legal theory which precluded evidence that would have authorized a contrary result and was harmful error. Also, the erroneous interpretation of *Rainey,* supra, indicates that the ALJ did not consider the evidence ". . . in the light of correct and applicable legal principles . . ." *Miller v. Travelers Ins. Co.,* 111 Ga. App. 245, 248 (141 SE2d 223) (1965). Therefore, the judgment of the superior court remanding the case to the board with direction that the ALJ fully consider the excluded testimony, assigning to it such weight as he sees fit, and after consideration make new findings of fact and conclusions of law, is correct.

*Judgment affirmed. Deen, C. J., and Shulman, J., concur.*

ARGUED MAY 30, 1979 — DECIDED
SEPTEMBER 10, 1979.

*Robert L. Kiser,* for appellants.
*Robert Carpenter, Ronald L. Hilley,* for appellee.